FILED
2021 Jul-26 PM 01:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES K. FLEMING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action Number** |
| | ) | **5:20-cv-01940-AKK** |
| **BILL JOHNSON, PRESIDENT &** | ) | |
| **CEO, TENNESSEE VALLEY** | ) | |
| **AUTHORITY** | ) | |
| | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION

Charles K. Fleming filed this employment discrimination suit against the Tennessee Valley Authority. Doc. 1 at 2-8. Fleming, who is African American, works at the TVA's Sequoyah Nuclear Plant in Soddy Daisy, Tennessee. Docs. 1 at 2; 22-1 at 3. Fleming claims the TVA unfairly disciplined him, denied him equal pay and multiple promotions, subjected him to a hostile work environment, and retaliated against him. *Id.* While most of the alleged conduct occurred in Tennessee, Fleming claims he occasionally travelled to the TVA's Brown's Ferry Plant in Alabama and experienced discrimination there as well. Doc. 1 at 5-6. Based on his trips to Brown's Ferry, Fleming filed this action in the Northern District of Alabama. Doc. 1.

The TVA moved to dismiss arguing that the allegations at Brown's Ferry are insufficient to make venue proper in this district under Title VII's venue

1

provisions. 42 U.S.C. § 2000e-5(f)(3); docs. 13 & 18 at 2. But, before the court may consider the Alabama allegations with regard to venue, Fleming must show that he has administratively exhausted these claims. *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277 (11th Cir. 2004). Fleming has not done so, and, even if he has, this case is still due to be transferred "[f]or the convenience of parties and witnesses, [and] in the interest of justice[.]" 28 U.S.C. § 1404(a).

## I.

This dispute arises out of three separate Equal Employment Opportunity Commission charges Fleming filed. The first charge challenged a seven-day suspension Fleming received at the Tennessee Plant in February of 2016. Doc. 22-1 at 3. Fleming claimed the TVA "unfairly disciplined [him] based on" unfounded and inaccurate statements. Doc. 22-2 at 4. Allegedly, others who committed similar infractions only received verbal or written warnings. Doc. 22-2 at 4. Also, Fleming claimed that he was "not given an opportunity to advance when a new foreman was named during his suspension," *id.* at 2, 4, and that there were no African American foremen or opportunities for African Americans to advance, *id.* at 4.

Fleming filed his second EEOC charge when the TVA failed to select him for a promotion to Maintenance Foreman at the Tennessee Plant in July 2016. Doc. 22-5 at 2. Fleming believed the TVA "discriminated against [him] based on [his] race, and fe[lt] the matrix was not followed correctly in the selection of permanent foreman positions." *Id.* at 3. Finally, Fleming filed his third charge in 2020

challenging the failure to award him several promotions, a hostile environment, and alleged retaliation based, in part, on the TVA's failure to select him to work at Brown's Ferry in October of 2020. Doc. 24 at 12, 14.

Fleming filed this lawsuit after the EEOC issued its final decision regarding his first charge. Docs. 1 at 1; 4-1 at 1, 3. Although he based this lawsuit on the exhausted first charge, he pleaded allegations relating to all three EEOC charges, including two allegations involving Brown's Ferry. Doc. 1 at 5-6. The court heard argument related to the TVA's motion to dismiss during which Fleming claimed venue is proper in this district because the alleged discrimination included conduct that occurred during his assignments at Brown's Ferry. And, because the parties disagreed over whether Fleming had administratively exhausted the allegations related to Brown's Ferry in the 2016 EEOC complaints,[1] the court required supplemental briefing, in part, on the exhaustion issue. The court also asked the parties to brief whether it should transfer this case to Tennessee even if venue is proper in Alabama, "for the convenience of parties and witnesses, [and] in the interest of justice[.]" 28 U.S.C. § 1404(a); doc. 21 at 2.

## II.

When a party moves to dismiss based on failure to exhaust administrative remedies, the court must apply a standard of review that is slightly different than

---

[1] The TVA previously moved to dismiss Fleming's second 2016 EEOC charge claiming this lawsuit included those allegations. Doc. 11 at 5. Based on the TVA's motion, the court has construed this case to include the second EEOC charge. Doc. 21 at 2.

3

the standards for Rules 12(b)(1) and (6). *Bryant v. Rich*, 520 F.3d 1368, 1374-75 (11th Cir. 2008); *Nodd v. Integrated Airline Servs., Inc.*, 41 F. Supp. 3d 1355, 1361-67 (S.D. Ala. 2014). To determine whether a plaintiff has exhausted a claim, "it is proper to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits, and the parties are given sufficient opportunity to develop the record." *Bryant*, 520 F.3d at 1376.[2] "First, the court must look to the factual allegations in the defendant's motion and the plaintiff's response, taking the plaintiff's version of the facts as true to the extent that it conflicts with that of the defendant." *Basel v. Sec'y of Def.*, 507 F. App'x 873, 875 (11th Cir. 2013) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008)). Then, "[i]f the complaint is not subject to dismissal at this step, the court must [] make specific findings to resolve the parties' factual disputes, and determine whether the defendant bore its burden of proving that the plaintiff failed to exhaust his administrative remedies." *Id.*

With regard to transfer, "a district court may transfer a civil action to any other district" in which the plaintiff may have filed the action "[f]or the convenience of parties and witnesses, in the interest of justice[.]" 28 U.S.C. § 1404(a). The court must establish first that the plaintiff could have originally filed the case in the

---

[2] While *Bryant* only concerned Prison Litigation Reform Act claims, several courts in this Circuit have applied its standard of review to Title VII claims. *See*, *e.g.*, *Basel v. Sec'y of Def.*, 507 F. App'x 873, 874-75 (11th Cir. 2013); *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421, 424 (11th Cir. 2010); *Nodd v. Integrated Airline Servs., Inc.*, 41 F. Supp. 3d 1355, 1364, n. 9 (S.D. Ala. 2014).

4

Case 3:21-cv-00283-KAC-DCP   Document 26   Filed 07/26/21   Page 4 of 10   PageID #: 179

venue to which it seeks to transfer the case, and, second, weigh a number of factors to determine if transfer is justified. *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008). Significantly, "the burden is on the movant to establish that the suggested forum is more convenient" or that litigation there would be in the interest of justice. *In re Ricoh Corp.*, 870 F.2d 570, 572-73 (11th Cir. 1989). Ultimately, "[t]he decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991).

### III.

#### A.

A Title VII plaintiff must first exhaust her administrative remedies. *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004). Exhaustion requires (1) that the plaintiff explicitly include the subject claim in her EEOC complaint or (2) a finding that the claim is "like or related to the charge's allegations" provided that it is within "the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (internal quotations omitted).

Fleming's Complaint contains two allegations related to Brown's Ferry. Doc. 1 at 5-6. As explained below, Fleming did not specifically include either contention in his 2016 EEOC charges. *See* doc. 1 at 5-6. Moreover, the allegations are not

5

"like or related to," nor did they "gr[o]w out of, the allegations contained in the EEOC charge[s]." *Batson v. Salvation Army*, 897 F.3d 1320, 1327-28 (11th Cir. 2018).

The first contention in the Complaint alleges facts about Brown's Ferry as an example supporting Fleming's allegation that the "[p]olicies that Rick Agnew [a supervisor] put in place created a system of segregation at [the] TVA." Doc. 1 at 5. Allegedly, based on Agnew's policies, the leadership at Brown's Ferry gave African Americans the worst shifts and tasks regardless of their experience level.[3] This contention, however, is not "like or related to" Fleming's assertions in his 2016 EEOC charges that the TVA "unfairly disciplined [him] based on" unfounded and inaccurate statements, doc. 22-2 at 4, and that the TVA discriminatorily denied him two promotions at the Tennessee Plant, docs. 22-2 and 22-5; *See Batson*, 897 F.3d at 1327-28; *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928 (11th Cir. 1983). Nor would the alleged use of discriminatory policies at Brown's Ferry be

---

[3] To support this contention, Fleming alleged in part that
> Brown's Ferry Nuclear Plant was used as a place where African American employees would have to travel to receive certain certification rather than acquire them at the Sequoia plant. . . . Once African Americans reach the site to perform outage work, they were again segregated to do the less favorable j[o]bs and shifts. . . . In one instance, when Plaintiff travelled to Brown's Ferry Nuclear Plant, he and his coworker, Angela McPhereson, an African American female, on this date and, in general, received and were scheduled for the unpopular, inflexible and most undesired promotion quality tasks and shifts . . . even though the Plaintiff and his co-worker had more seniority. . . Jake Nelson, superintendent, and a white male, made this assignment and facilitated the discriminatory shift policy promulgated and created by Rick Agnew.

Doc. 1 at 5-6.

expected to grow out of the 2016 charges. *Batson*, 897 F.3d at 1327-28; *Evans*, 696 F.2d at 929. Therefore, Fleming's claim is not administratively exhausted with respect to this first contention.

Similarly, Fleming has also not administratively exhausted the second contention in the Complaint related to Brown's Ferry. Allegedly, the superintendent at Brown's Ferry and others "added additional undesirable promotion quality tasks to the Plaintiff's schedule, refused to adequately increase the Plaintiff's pay and classification and otherwise treated the Plaintiff with hostility and disdain in retaliation for and as a result of the Plaintiff filing this action and the EEOC action." Doc. 1 at 6. These allegations also do not relate to Fleming's contentions in the 2016 EEOC charges that the TVA "unfairly disciplined" him or denied him promotions at the Tennessee Plant because of his race. Docs. 22-2; 22-5; 22-6; *Batson*, 897 F.3d at 1327-28; *Evans*, 696 F.2d at 929; *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-1225 (11th Cir. 2000). They also are not the type of facts that one would expect to grow out of his 2016 charges. *Batson*, 897 F.3d at 1327-28; *Evans*, 696 F.2d at 929; *Chanda*, 234 F.3d at 1224-1225.

Perhaps recognizing that the allegations related to Brown's Ferry do not grow out of his exhausted 2016 EEOC charges, Fleming also argues that the court should consider his 2020 EEOC charge in its analysis. As Fleming puts it, he will eventually include the allegations in this action "upon the completion of its course

7

assuming the defendant mirrors its legal arguments that resulted in the merger of the two 2016 EEO claims pending in this action. Hence, the [Alabama] allegations are squarely within [the] projected [] scope of this pending legal action." Doc. 24 at 4. The court declines to do so because the administrative process for the 2020 charge is still open, doc. 24 at 9-11, and the charge is not administratively exhausted. *Gregory*, 355 F.3d at 1279-80. Further, the Complaint was not based on the 2020 EEOC charge, docs. 4; 4-1; 4-2; 11 at 3; 21 at 2, and Fleming has not cited any legal support for his position.

For all these reasons, Fleming's failure to administratively exhaust the issues related to Brown's Ferry precludes the court from finding that the alleged discrimination Fleming suffered at Brown's Ferry is sufficient for him to bring this lawsuit in this district.

**B.**

But, even if venue is proper in this district, transfer to the Eastern District of Tennessee is warranted. Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). This entails that the court determine first if Fleming could have originally filed this case in the Eastern District of Tennessee. *Steifel Labs., Inc.*, 588 F. Supp. 2d at 1338. The answer is yes—Fleming claims the TVA unlawfully

8

denied him promotions at his home plant, which is located in the Eastern District of Tennessee. Docs. 1 at 2-4; 22-1 at 3; 22-3 at 2.

Next, the court must determine if transfer is justified. *Steifel Labs., Inc.*, 588 F. Supp. 2d at 1338.[4] The convenience of the parties and witnesses is often considered the single most important factor in the transfer analysis, *see Steifel Labs., Inc.*, 588 F. Supp. 2d at 1339, and here, both parties are located in Tennessee. Docs. 1 at 1-2; 4-1 at 1. Further, the witnesses interviewed during the EEOC investigations were in Tennessee. Doc. 22 at 3, 4 (citing docs 22-4 and 23-1). Conversely, only the leadership of the Brown's Ferry plant, which is ostensibly under the control of the TVA, is located in Alabama, doc. 24 at 4-5. So, these factors weigh in favor of transfer. And, similarly, trial efficiency and the interests of justice weigh in favor of transfer as the majority of witnesses and the parties are located in Tennessee. Also, most of the relevant documents and sources of proof will likely be in Tennessee where the TVA's headquarters and the Sequoyah Plant

---

[4] To do so, the court must utilize and weigh the following factors:
(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Three of these factors—the parties' relevant means, the court's ability to compel witnesses, and the forum's familiarity with the governing law—add little to the analysis as neither party addressed these factors and all federal courts are equally capable of applying Title VII.

are located. Doc. 1 at 1.[5] Finally, even though the leadership at Brown's Ferry may have purportedly helped design the hiring process,[6] *see* doc. 24 at 5, most of the operative facts occurred in Tennessee where the TVA purportedly unfairly disciplined Fleming and denied him promotions. Docs. 22-2 at 2; 22-5 at 3.

To close, except for Fleming's choice of forum, all the relevant factors favor transfer.

## IV.

The court finds, in its discretion and based on the totality of the circumstances, that the balance of factors weighs heavily in favor of transferring this case to the Eastern District of Tennessee even if venue was proper in this district. The court will issue an order consistent with this opinion contemporaneously.

**DONE** the 26th day of July, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[5] While this factor favors transfer, it carries less weight "in the current world of expedited transfer of information." *Steifel*, 588 F. Supp. 2d at 1340; *see also Watson v. Earthbound Holding, LLC*, 2012 WL 3775760, *3 (N.D. Ala. Aug. 27, 2012) (citing *Dendy v. Decker Truck Line, Inc.*, 2010 WL 3398987, *3 (M.D. Ala. Aug. 26, 2010)).

[6] Fleming contends that the decisionmakers at Brown's Ferry "jointly used and participated in creating the testing and job evaluation process for which the plaintiff was ultimately denied in 2016." Doc. 24 at 3.

10